The relief described hereinbelow is SO ORDERED.

Signed September 30, 2008.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---|
| **COREY NELSON COFFELT and** | **Case No. 07-20642** |
| **JENNIFER LYNN COFFELT,** | **Chapter 7** |
| **Debtors.** | |

**CHRISTOPHER J. REDMOND,**
**Chapter 7 Trustee,**
      **Plaintiff,**

    **v.**                                                       **Adv. No. 07-6296**

**M & I MARSHALL & ILSLEY BANK,**
      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

    The parties have filed cross-motions for summary judgment.[1]  The Trustee sued

Defendant M&I Marshall & Ilsley Bank ("M&I") to avoid preferential transfers and to recover

_____

    [1]  Trustee's Motion for Summary Judgment, Doc. No. 20, and Defendant's cross Motion for Summary
Judgment, Doc. No. 22.

08.09.30 Redmond v M&I SJ.wpd

real property or its value for the benefit of the Estate under 11 U.S.C. §§544, 547, and 550.  This

matter constitutes a core proceeding over which this Court has jurisdiction.[2]  There being no

genuine issue of material fact, the Court grants the Trustee's motion and denies the Defendant's

motion.

### Findings of Fact

Debtors filed for bankruptcy on March 29, 2007.  M&I's claim arises out of a series of

promissory notes dated from October 25, 2002, to December 9, 2004, executed by Debtors'

businesses, Recycle Solutions, L.L.C., and Digital Waste, LLC.  Debtors are personally

obligated on the notes by either executing the notes individually or personally guarantying them.

As of the petition date, Debtors owe M&I $540,649.39, of which M&I claims $50,000.00 is

secured.  The notes were partially secured by various personalty; however, the following

described real estate is the only alleged collateral at issue in this proceeding.

On the petition date, Debtors claimed equitable interests as vendees under two separate

contracts for deed for property located in Sunflower Estates, Johnson County, Kansas.  Debtors

purchased Lots 1, 2, and 3 from Richard and Annette Gratny on September 24, 2002.  Debtors

then purchased Lot 4 from Charles and Diane Pettit on February 2, 2003 (collectively, the

"Contracts").

In 2005, M&I requested Debtors provide additional collateral to support the outstanding

indebtedness owed to M&I.  On August 18, 2005, by two separate assignments, Debtors

assigned their equitable interests in the Contracts to M&I (the "Assignments").  Both

Assignments are identical in form and recite the various loan agreements by which Debtors are

indebted to M&I.  Each Assignment references and describes the relevant Contract assigned.

---

[2]  28 U.S.C. §157(b)(2); 28 U.S.C. §1334.

08.09.30 Redmond v M&I SJ.wpd

The Assignments then read, in part, as follows:

> Assignor desires to absolutely assign to Assignee the interest of Assignor in and under the Contract, as primary and not as secondary security both for the payment of all the above Indebtedness.
>
> IN CONSIDERATION of the loans made to Assignor, the mutual covenants contained in this Assignment and for other good and valuable considerations, the receipt and sufficiency of which are acknowledged by Assignor, the parties agrees [sic] as follows:
>
> 1.    Assignor absolutely and not conditionally assigns, transfers, set over, and conveys to Assignee (a) all present and future right, title, and interest of Assignor in, to, and under the Contract; and (b) all rents, fees, issues, proceeds, profits, income, payments, benefits, and advantages from the Property and any personal property owned by Assignor and located on the Property.
>
> 2.    The Assignment will remain in effect until (a) all debts and other obligations evidenced by the above promissory notes and guaranties are timely paid in full; or (b) this Assignment is voluntarily released by Assignee.
>
> 3.    Assignor must continue to make all payments and fulfill all of the terms and conditions of the Contract [for Deed], unless and until default occurs in the payment of the Indebtedness under the loan documents or Assignor fails to perform any of the terms of the Contract.
>
> 4.    Assignor will be in default under the Assignment upon the happening of any one or more of the following events:
>
>> a.    Failure of Assignor to make any payment or perform any obligation contained in the above-described promissory notes, or in any of the other loan documents, or in this Assignment.
>>
>> . . . .
>>
>> c.    The Contract or the Property are encumbered without the prior written consent of Assignee, is subject to any levy, seizure, or attachment.
>>
>> . . . .
>>
>> e.    Assignor attempts to modify the Contract without obtaining prior written consent of the Assignee.
>
> 5.    Upon the occurrence of an event of default, as defined above, Assignee

- 3 -

will notify Owner [either the Gratnys or Pettits, as applicable] of this default and Assignee will have the right to take possession and control of the Property and all rights related to the Contract, without any notice to Assignor. After default, Assignor agrees that they have no further rights under the Contract, except as permitted by the Assignee.

6. The remedies provided in this Assignment and in the other loan documents are cumulative and not mutually exclusive. . . .

7. The following provisions are additional terms of this Assignment:

    a. Assignee has no duty to maintain, repair, or protect the Contract or the Property.

    . . . .

    d. All obligations of Assignor will bind its trustees, custodians, successors, and assigns.

    . . . .

    f. Nothing in this instrument will be construed to amend, modify, or change any of the terms and obligations under the promissory notes or loan documents.

    g. Assignor agrees to fully defend and indemnify Assignee against any loss, cost, liability, claim, or assertion arising under the Contract.

Debtors executed and delivered the Assignments to M&I. Debtors did not receive any credit toward the debt owing to M&I or receive any new value in exchange for the Assignments. On December 9, 2005, M&I filed the Assignments with the Johnson County Register of Deeds. M&I paid a $44.00 filing fee to record the Gratny Contract Assignment and a $40.00 filing fee to record the Pettit Contract Assignment. M&I also recorded Affidavits of Equitable Interest pertaining to each property and paid a $12.00 filing fee for each affidavit (the "Affidavits"). The Affidavits also reference the relevant Contract by date, parties, and legal description of the property. The Affidavits aver they are given "solely for the purpose of providing notification that the Contract for Deed described above has been assigned to the Affiant." M&I did not pay a

- 4 -

Kansas mortgage registration fee for any of the Assignments or Affidavits filed.

On December 29, 2006, Debtors sold their equitable interest in Lot 2 under the Gratny Contract for $155,000.00.[3] M&I received $24,758.75 from the Lot 2 sale proceeds.

On July 24, 2007, after notice of intended sale, this Court approved the Trustee's proposed sale of Debtors' equitable interests in Lots 1, 3, and 4 for a purchase price of $450,000.00 free and clear of all liens, claims, interests, and encumbrances. After sale expenses, the Trustee holds net proceeds of $39,408.55.

On December 19, 2007, the Trustee filed the instant complaint to recover the $24,758.75 in pre-petition proceeds received by M&I for the sale of Lot 2 as a preferential transfer. The Trustee also seeks to avoid the Assignments as unperfected encumbrances on Debtors' real estate and retain the net sale proceeds of $39,408.55 from the post-petition sale of Lots 1, 3, and 4 for the benefit of the Estate. The Trustee maintains the Assignments were unperfected mortgages because M&I did not pay a mortgage registration fee when it recorded either Assignment.

M&I counters the Assignments were absolute conveyances, so the lots were never property of the Estate. In the alternative, M&I argues the Kansas mortgage registration fee is merely a revenue producing tax and does not keep the Assignments from being perfected mortgages against the real estate.

The first issue is whether the Assignments and Affidavits constitute absolute transfers or security transfers. The second issue is if the transactions were security transfers, whether they were properly perfected prior to the preference period.

---

[3] M&I disputes Debtors' equitable interest was sold, relying on its Assignments to argue M&I's equitable interest was sold. M&I's dispute is a legal argument and not a genuine factual dispute. Debtors sold the property. *See* Complaint to Determine Validity, Priority, and Extent of Lien and to Avoid and Recover Preferential Transfer, Doc. No. 1, Exhibit 25, Settlement Statement.

08.09.30 Redmond v M&I SJ.wpd

## Conclusions of Law

### A.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[4]  The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  A movant who does not bear the ultimate burden of persuasion at trial must demonstrate to the court a lack of evidence from the other party on an essential element of that party's claim.[6]  If the movant meets this burden, the nonmovant who would bear the burden of persuasion at trial must go beyond the pleadings and set forth specific facts which would allow the court to find for the nonmovant.[7]

Cross-motions for summary judgment allow the court to assume the only evidence to be considered has been submitted with the pleadings.  However, cross-motions are to be considered independently, and summary judgment is not appropriate if disputes remain as to any material fact.[8]  The court resolves any conflicting inferences drawn from undisputed evidentiary facts. All inferences are to be construed in favor of the non-moving party.[9]  Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper.[10]

### B.     Controlling Law

When a debtor files for bankruptcy, the debtor's legal and equitable interests in property

---

[4]   FED. R. BANKR. P. 7056.

[5]   *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[6]   *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

[7]   *Id., citing* FED. R. CIV. P. 56(e).

[8]   *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).

[9]   *Id.*

[10]   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).

08.09.30 Redmond v M&I SJ.wpd

become property of the estate.[11]  State law usually defines the debtor's rights in the property.[12]

Federal law provides the trustee with rights of a bona fide purchaser of a debtor's real property

under §544(a)(3).  However, a Chapter 7 trustee receives the property subject to any restrictions

imposed on the debtor's rights by state law.  Thus, whether the Chapter 7 trustee receives

property into the estate depends on the debtor's interest in the property as of the petition date.

Likewise, whether a creditor holds a security interest and whether the security interest is

unperfected, and therefore avoidable, is also controlled by state law.[13]

### C.      Kansas Contracts for Deed

A buyer under a Kansas contract for deed on real property becomes the equitable owner

of the real property and the seller retains legal title as security for the purchase price.[14]  K.S.A.

§79-3101 provides:

> An executory contract for the sale of real estate, or a bond for a deed, the
> complete performance of which is deferred for a longer period than ninety days
> from its execution, under which the grantee or vendee is entitled to the possession
> of such real estate, by the terms of which the grantor holds the legal title as
> security for the unpaid purchase money, shall for the purpose of this [Mortgage
> Registration and Intangibles Act] be treated as a mortgage of real property to
> secure the balance of the unpaid purchase price.

Thus, a Kansas contract for deed is treated as an equitable mortgage.  The buyer is analogous to

a mortgagor and the seller is analogous to a mortgagee.  The contract for deed constitutes a first

lien encumbering the real property.

### D.      Defining a Mortgage under Kansas Law

---

[11]  11 U.S.C. §541(a).

[12]  *Butner v. United States,* 440 U.S. 48, 54-55 (1979).

[13]  *Morris v. CIT Group/Equipment Financing, Inc. (In re Charles),* 323 F.3d 841, 842-43 (10th Cir. 2003).

[14]  *Garnett State Sav. Bank v. Tush,* 232 Kan. 447, 454 (1983).

08.09.30 Redmond v M&I SJ.wpd

The vendee's interest under a contract for deed is an interest in real property which may be transferred or mortgaged.[15] A buyer under a contract for deed who mortgages his equitable interest in the real property is thus granting a second mortgage. The second mortgage is behind the contract for deed which evidences the seller's first equitable mortgage for the remainder of the purchase price. The second mortgage is enforceable only so long as the contract for deed is kept in force; however, the second mortgagee obtains an interest in the real estate, not the contract.[16]

Under Kansas law, a mortgage of real property is an instrument creating or imposing a lien on real property.[17] No particular form is necessary. All that is necessary is a debt and real property encumbered as security for payment of the debt.[18] The test in determining whether a transaction is an absolute conveyance or a mortgage is whether, after the transaction, a debtor and creditor relationship continues between the parties.[19] While the form of the instrument may state an absolute conveyance is being entered, a continuing debt evidences the instrument is in reality a mortgage.[20] Thus, whether the instrument is titled a mortgage, a security agreement,[21] an assignment,[22] an affidavit, a trust indenture,[23] or a bond resolution,[24] if the instrument pledges

---

[15] *Id.*

[16] *Id.*; *see, e.g., Rush v. Anestos,* 661 P.2d 1229, 1234 (Idaho 1983).

[17] K.S.A. § 79-3101.

[18] *Assembly of God v. Sangster,* 178 Kan. 678, 680 (1955).

[19] *Hoyt v. Union Nat'l Bank of Wichita,* 115 Kan. 167, 172 (1924).

[20] *Id.*

[21] *Garnett State Sav. Bank v. Tush,* 232 Kan. at 447.

[22] *National Bank of Tulsa v. Warren,* 177 Kan. 281 (1955) (document titled "Collateral Assignment of Production Payment" really a mortgage).

[23] *Mid-Central/Sysco Food Services v. Board of Tax Appeals,* 13 Kan. App. 2d 509 (1989).

[24] *Assembly of God,* 178 Kan. at 681(document titled "Certified Bond Resolution" was a mortgage and required a mortgage registration fee payment before being recorded).

08.09.30 Redmond v M&I SJ.wpd

land for the payment of money, the instrument is a mortgage. In *Assembly of God*, the Kansas

Supreme Court considered whether a bond resolution created a lien on real property as to make it

subject to the mortgage registration fee.[25] The resolution provided the property could not be

encumbered while the bonds were outstanding and contained provisions relating to insurance,

acceleration, and default. In finding the resolution to be a mortgage, the court found the

resolution created a lien on real property to secure the repayment of the bonds. The court

deemed a provision stating the instrument was not intended as a mortgage to be a self-serving

statement which did not detract from the more obvious purpose of the document as a whole.[26]

Thus, an instrument is a mortgage regardless its title if it includes a recital of a debt and a lender

claiming an interest in real property belonging to the debtor.

### E.      Perfecting a Mortgage under Kansas Law

In analyzing preferential transfers, the transfer date is set as the date of perfection.[27] A

transfer of real property is perfected when a bona fide purchaser cannot acquire an interest

superior to the interest of the transferee.[28]

In Kansas, transfers of an interest in real property must be evidenced by a written

document and perfected by recording the document with the register of deeds of the county in

which the real estate is situated.[29] The law's purpose is to provide a public notice recording

system for transactions affecting real property titles.[30] Recording imparts notice of the

---

[25]  *Id.*

[26]  *Id.*

[27]  11 U.S.C. §547(e)(1)(A).

[28]  *Id.*

[29]  K.S.A. § 58-2221.

[30]  *Misco Industries, Inc. v. Bd. Of County Comm'rs of the County of Sedgwick,* 235 Kan. 958, 961 (1984).

- 9 -

08.09.30 Redmond v M&I SJ.wpd

transferred interest to all subsequent purchasers and mortgagees.[31]  Unrecorded documents or

improperly recorded documents remain valid as between the parties to the transaction; however,

failure to record the document properly keeps the transaction from being properly perfected and

thus renders the mortgage vulnerable to a bankruptcy trustee's avoidance powers.[32]

### F.    The Mortgage Registration Fee

Recording a mortgage is not free.  Before any mortgage of real property is received and

filed for record, there shall be paid to the register of deeds of the county in which such property

or any part thereof is situated a registration fee of .26 percent of the principal debt or obligation

which is secured by such mortgage.[33]  Any mortgage of real property on which the registration

fee has not been paid shall not be filed for record by any register of deeds, and such mortgage

shall not be received in evidence in any suit, action or proceeding, and no judgment, decree or

order for the enforcement shall be rendered, made or entered in or by any court in this state.[34]  If

a mortgagee does not pay for public notice, a mortgagee is not entitled to the benefits of public

notice.  In short, no fee, no judgment, no enforcement, no mortgage.

The fee's purpose is to insure the cost of the mortgage recording system is borne by those

seeking its protection, namely, the mortgagees.[35]  Thus, without payment of the mortgage

registration fee, the mortgage is without force.[36]  "[O]ne who owns a mortgage cannot refuse to

---

[31]  K.S.A. §58-2222.

[32]  K.S.A. §58-2223 (an unrecorded mortgage is not valid except between the parties thereto); *In re Androes,* 382 B.R. 805 (Bankr. D. Kan. 2008) (recorded mortgage missing date of acknowledgment was not properly recorded and did not provide notice of mortgagee's interest).

[33]  K.S.A. §79-3102(a).

[34]  K.S.A. §79-3107.

[35]  *Misco Industries,* 235 Kan. at  961.

[36]  *Ditzen v. Given,* 139 Kan. 506, 510 (1934).

- 10 -

08.09.30 Redmond v M&I SJ.wpd

pay taxes to support the courts, and then resort to the courts to collect his mortgage."[37]  While

failure to pay the registration fee does not void the mortgage as between the parties, the

mortgage cannot be enforced until the fee is paid.[38]

Outside bankruptcy, there is no stated deadline to pay the fee.[39]  Ordinarily, the

registrar's refusal to file the instrument until payment is tendered is sufficient to insure the fee is

timely paid.  However, registrars have made mistakes and mortgages have been recorded without

payment of the fee.[40]  For example, in *Nebraska Hardware*, a mortgagee initiated an action to

enforce a mortgage before the fee was paid.  The mortgagor protested the action could not

proceed.  However, the court noted the fee was paid during the pendency of the trial and before

the court received the instrument into evidence.  Thus, the mortgage was enforceable under the

statute at the time the court admitted the evidence.  The court found the mortgagee's desire to

enforce its mortgage by resorting to the courts provided the incentive to insure the fee's

payment.[41]  On the other hand, *Ditzen* dismissed the mortgage enforcement action because the

fee had never been paid.  The court found the mortgagee had never complied with the statute and

consequently no judgment could be based on the mortgage.[42]  The conclusion of Kansas cases

dealing with a recorded mortgage for which no registration fee has been paid is to definitively

reiterate: No court may enter judgment on a mortgage for which the fee remains unpaid.  Thus,

---

[37]  *Id.*

[38]  *Berger v. Bierschbach,* 201 Kan. 740, 745 (Kan. 1968) ("Failure to pay the registration fee, or tax, does not vitiate an instrument given as security, even though its enforcement as a mortgage may not be entered by any court until the fee has been paid."); *Nebraska Hardware Mut. Ins. Co. v. Johnson,* 156 Kan. 756, 762 (1943) (a mortgage cannot be the basis for an enforcement action absent payment of the mortgage registration fee).

[39]  *Id.*

[40]  *See, e.g., Ditzen,* 139 Kan. at 506; and *Nebraska Hardware Mut. Ins. Co.,* 156 Kan. at 756.

[41]  *Id.; see also Coryell v. Hardy,* 144 Kan. 194 (1936); *Fowler v. Moore,* 147 Kan. 108 (1938).

[42]  *Ditzen,*139 Kan. at 506.

- 11 -

08.09.30 Redmond v M&I SJ.wpd

in order to have an enforceable mortgage, that is, a perfected mortgage, the last act necessary under Kansas law is to pay the mortgage registration fee. Outside bankruptcy, this act may occur anytime up to entry of the mortgage instrument into evidence. If the case is submitted for judgment without payment of the fee, *Ditzen* holds the action must be dismissed.

### G. Mortgage Registration Fee Exemption

The mortgage registration fee statute contains exemptions. No registration fee whatsoever shall be paid, collected or required for or on any mortgage or other instrument given in the form of an affidavit of equitable interest solely for the purpose of providing notification by the purchaser of real property of the purchaser's interest.[43] This exemption provides the buyer under a contract for deed a way to give notice of his interest in the real property without being required to pay a mortgage registration fee. Because the contract for deed is treated as a mortgage with the seller as mortgagee, the seller should pay the registration fee; however, the cost, in reality, is passed to the mortgagor. This exemption allows the buyer/mortgagor to protect his interest while the seller/mortgagee retains legal title to the property as security for the debt. This exemption applies only to buyers under a contract for deed and cannot be used by anyone else who obtains an interest other than as a buyer. Further, the affidavit must be filed "solely for the purpose of providing notification" of the buyer's interest. The affidavit may not incorporate another document, such as the contract for deed itself, to establish the interest.

The carve-out provides an exemption from taxation and must be narrowly construed.[44] If the affidavit provides notice of anything else, it does not satisfy the statute's requirements and

---

[43] K.S.A §79-3102(d)(5).

[44] *Meadowlark Hill, Inc. v. Kearns,* 211 Kan. 35 (1973).

08.09.30 Redmond v M&I SJ.wpd

may not be recorded without paying a mortgage registration fee.

###### H. Analysis

Applying the law to the facts, the Assignments are unquestionably mortgages as a matter of Kansas law. The Assignments recite Debtors' prior indebtedness to M&I and further recite the Contracts are given as primary security for the preexisting debt. Although both Assignments contain one paragraph stating the transfer is unconditional, the Assignments then each contain at least six paragraphs listing several conditions of the transfers, including releasing the Assignments upon payment of the underlying debt; providing M&I with cumulative remedies upon Debtors' default; requiring Debtors to keep the underlying Contracts in effect; prohibiting Debtors from further encumbering their equitable interests without M&I's prior permission; and requiring Debtors to continue to make payments under the Contracts. All responsibilities indicative of property ownership under the Contracts are left to the Debtors, and no obligations under the Contracts are transferred to M&I. Under *Garnett State Savings Bank* and other Kansas cases cited herein, the Assignments must be deemed mortgages of Debtors' equitable interest under the Contracts.[45]

Similarly, the Affidavits are nothing more than an attempt to give notice of M&I's lien against Debtors' property interest. The Affidavits are not limited to giving notice of an equitable interest in real property by a purchaser under a contract for deed. The Affidavits identify and incorporate the Contracts and the Assignments and, thus, give notice of two encumbrances: the sellers' first priority interest under the Contracts and M&I's second mortgage on Debtors'

---

[45] *Garnett State Sav. Bank v. Tush,* 232 Kan. at 447.

- 13 -

08.09.30 Redmond v M&I SJ.wpd

interest under the Contracts. Therefore, the Affidavits do not meet the sole purpose requirement

of K.S.A. §79-3102(d)(5), which is limited to providing notice of a purchaser's interest under a

contract for deed. Further, the Affidavits are subscribed and sworn to by a person acting as an

agent of M&I. M&I is not purchasing the real property under a contract for deed. Therefore,

M&I does not qualify for a mortgage fee exemption with the Affidavits. Neither the

Assignments nor the Affidavits should have been recorded without payment of the mortgage

registration fee.

M&I argues K.S.A. §79-3102 does not address perfection, and payment of the mortgage

registration fee has no bearing on whether a mortgage is properly perfected. This is not true.

The statute clearly states the mortgage cannot be enforced in a court of law without a fee

payment. Those seeking protection of the notice system must pay for it. In this case, the fact the

mortgage made it onto the public record without payment of the fee is insufficient to defeat a

bona fide purchaser for although the Assignments appear in the record, they remain inadmissible

and unenforceable in court. Consider a hypothetical for the purposes of §547(e)(1)(A). If

Debtors had sold their equitable interest to a third party, M&I would need to seek enforcement of

its mortgage against the land through a quiet title action against the purchaser. Although M&I

would argue (and does argue) its mortgage appears on the public record thereby providing notice

of its claim, the court could not accept the mortgage into evidence without payment of the fee.

M&I cannot claim the benefits of Kansas's recording system without paying for it. M&I would

be treated like any other mortgagee attempting to enforce an unrecorded mortgage. Likewise,

M&I cannot accomplish notice indirectly with the Affidavits, having failed to pay any fee.

Without payment of the fee, the court could not admit evidence of the mortgage. *Ditzen* requires

- 14 -

08.09.30 Redmond v M&I SJ.wpd

the case be dismissed.  The purchaser would prevail in the hypothetical quiet title action as the Trustee must in this case.

The cases relied on by M&I are distinguishable.[46]  All involved partial or insufficient payment of the mortgage registration fee, not a complete failure to pay the fee at all.  The statute says no fee, no enforcement.  Because the fee supports the costs of those who would seek to resort to the courts to enforce their mortgage agreements, mortgagees must pay the fee before the document may be admitted into evidence – regardless the fact the mortgage was recorded in contravention to the law in the first place.[47]  *Kruckenberg* specifically notes partial payment allows the mortgage instrument to be entered into evidence, but the mortgagee who fails to pay any fee will not be able to avoid the full force of the statute's penalty.[48]  *Kruckenberg* is consistent with *Coryell* and its progeny which found the mortgagee could make its mortgage enforceable by paying the fee on the eve of offering the mortgage instrument into evidence.  In this case, no argument is made that any portion of the fee has been paid.

While the result may seem draconian, perfection requires strict adherence to the statutes. For example, a notary's failure to date the acknowledgment of a mortgage instrument can strip a mortgagee of his ability to enforce the mortgage.[49]  An undated mortgage is not entitled to be recorded under Kansas law; thus, a recorded but undated mortgage does not provide the requisite notice to survive avoidance by the trustee's strong-arm powers.[50]  Similarly, a purchase-money

---

[46] *Halliburton Co. v. Bd. of County Comm'rs for the County of Jackson,*12 Kan. App. 2d 704 (1988); *Potwin State Bank v. J.B. Houston & Son Lumber Co.,* 183 Kan. 475 (1958); *Kruckenberg v. First Nat'l Bank of Medicine Lodge,* 160 B.R. 663 (D. Kan. 1993).

[47] *Ditzen,* 139 Kan. at 506.

[48] *Kruckenberg,* 160 B.R. at 669.

[49] *In re Androes,* 382 B.R. at 805.

[50] *Id.*

- 15 -

08.09.30 Redmond v M&I SJ.wpd

security interest in an automobile is not perfected by filing a notice of security interest if the creditor does not also comply with Kansas's certificate of title laws.[51]  Lastly, a recorded mortgage is insufficient to perfect a security interest in the seller's rights under a contract for deed.[52]  A security interest in the seller's interest must be perfected by filing a financing statement with the Kansas Secretary of State.[53]  What these cases show is while the creditor's interest may be part of the public record, such notice is without legal effect without strict compliance with the relevant statute pertaining to enforcing the interest.

The Assignments were transfers of Debtors' property on account of an antecedent debt. The Assignments were never properly perfected, that is, they were unenforceable as of the petition date as against a bona fide purchaser.  The Debtors are presumed to have been insolvent. The recording of the Assignments and Affidavits without payment of the mortgage registration fee could not impart notice as a matter of Kansas law.  Accordingly, summary judgment is appropriate in favor of the Trustee.

> I.     **Conclusion**

For the foregoing reasons, M&I's Motion for Summary Judgment is DENIED.

The Trustee's Motion for Summary Judgment is GRANTED and judgment is entered in the Trustee's favor on the Complaint.  The Assignments and Affidavits are void and avoided under 11 U.S.C. §544 and other applicable law.

IT IS SO ORDERED.

---

[51]  *Morris v. Hicks (In re Hicks),* 491 F.3d 1136 (10th Cir. 2007).

[52]  *Griffin v. Security State Bank (In re Huntzinger)*, 268 B.R. 263 (Bankr. D. Kan. 2000).

[53]  *Id.*

08.09.30 Redmond v M&I SJ.wpd

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

08.09.30 Redmond v M&I SJ.wpd